# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2026 ND 20

David Hughes,

v.

Dana Waters,

Plaintiff and Appellee

Defendant and Appellant

### No. 20250364

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Daniel S. El-Dweek, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Justice.

Patrick W. Waters, Bismarck, ND, for plaintiff and appellee; submitted on brief.

Dana Waters, Blaine, WA, defendant and appellant; submitted on brief.

**Jensen, Justice.**

[¶1]   Dana Waters appeals from a judgment granting primary residential responsibility of two of her children, D.H. and C.H., to David Hughes. Waters contends the district court lacked jurisdiction based upon an action she initiated in a California court. We affirm.

I

[¶2]   Waters and Hughes had a four-year relationship that began in 2016; the couple were living in the state of Washington at the time. Waters was pregnant with C.H. as the result of a prior relationship when the parties' relationship began. Since the time of C.H.'s birth, Hughes has raised the boy as his own, including paying child support. In 2018, the couple had a second son, D.H. The couple separated when Hughes moved to Oregon. After the separation, Hughes and Waters shared custody of the two young children on a week-on/week-off basis.

[¶3]   Hughes moved to North Dakota near the end of 2020. Hughes and Waters agreed the children would visit Hughes in North Dakota during the summers and at Christmastime. In 2021, the children spent additional time with Hughes in North Dakota while Waters recovered from a back surgery. In 2022, Hughes had the children in North Dakota for a shortened summer vacation and also maintained regular contact with them via Zoom when they were with Waters in Washington. In April 2023, Waters moved with the children from Washington to California. In June 2023, Hughes flew the children from California to North Dakota to start their summer vacation with him.

[¶4]   Near the end of the summer, Hughes informed Waters he was not going to return the children to her. Hughes later testified at trial that he did not want to return the children to Waters out of concern for their safety including the following: (1) a friend expressed concern about the children being with their mother; (2) Waters's twelve-year-old daughter had been raped by Waters's boyfriend and the daughter told Hughes she thought he should have custody of

the two younger children; (3) Hughes had previously seen the two younger children around the perpetrator; (4) Hughes questioned Waters's choice in men and her lack of stability based upon frequent changes in residence; and (5) Hughes believed Waters was living off of public assistance and he was able to provide a more stable environment for the children.

[¶5]   Shortly after Hughes informed Waters he would not be returning the children, both Hughes and Waters started court actions. On August 9, 2023, Waters commenced an action against Hughes in California by filing a complaint, but did not obtain service on Hughes until October 20, 2023. Hughes commenced the North Dakota action against Waters by service of the summons on August 30, 2023.

[¶6]   After Waters had filed her complaint, but before obtaining actual service on Hughes, the California court issued two ex parte orders. The first was issued on August 9, 2023, and indicated the California court was "exercising emergency jurisdiction" and ordered the children to be returned to their mother in California. The second ex parte order was issued on October 17, 2023, and indicated it was "not to be considered a temporary order" and also ordered the children to be returned to their mother in California.

[¶7]   On October 23, 2023, Hughes filed a motion for an interim order in his child custody action in North Dakota. The district court held a hearing on November 9, 2023. Hughes noted the existence of the California case in his filings and at the hearing, but asserted the children had lived in California for only two months and that the North Dakota court had jurisdiction. Following the hearing, the court sent a letter to the California judge, noting in part Hughes's assertion the children had only lived in California for a maximum of two months and asking the judge whether the California court planned on asserting or declining jurisdiction. On December 6, 2023, the two judges followed up with a phone call at a status conference in the North Dakota case, during which the judges "agreed to allow the parties to make any arguments regarding jurisdiction in writing" in the North Dakota action.

[¶8] Following the status conference, Hughes served and filed a brief in support of North Dakota jurisdiction; Waters did not serve or file a brief in support of California jurisdiction. After serving and filing his brief, Hughes further supported his argument by filing an email he had received from the California court, which included an order entered therein on December 15, 2023. The order purportedly transferred the California case to the State of Washington pursuant to Waters's oral motion to do so, but there is nothing in the record to indicate there is (or ever was) a pending child custody action in the State of Washington.

[¶9] On February 2, 2024, the district court issued an order determining North Dakota had jurisdiction. The court found the children had not resided in either California or North Dakota for the requisite six months for either state to be considered a "home state" under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). The court also found there was no evidence of a pending child custody action in Washington. The court held these circumstances made it appropriate for North Dakota to exercise jurisdiction under N.D.C.C. § 14-14.1-12(1)(d).

[¶10] A trial was held on May 16, 2025, at which Waters appeared and represented herself. Waters argued the district court lacked jurisdiction. The court noted that it had already addressed that issue, and continued with the trial. Following the trial, the court entered findings of fact, conclusions of law, and an order for judgment granting primary residential responsibility of D.H. and C.H. to Hughes. A judgment was entered on August 18, 2025.

II

[¶11] Relying upon the two ex parte orders issue by a California court in August 2023 and October 2023, Waters challenges the judgment arguing the district court lacked jurisdiction. "Whether the UCCJEA provides subject matter jurisdiction over a child custody proceeding presents a mixed question of law and fact," with the findings of fact reviewed for clear error and the legal questions reviewed de novo. *Kubal v. Anderson*, 2024 ND 123, ¶ 5, 8 N.W.3d 811.

[¶12] In the August 2023 ex parte order, the California court purported to exercise its "emergency jurisdiction." In relevant part, California law provides "[a] court of this state has temporary emergency jurisdiction *if the child is present in this state* and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to, or threatened with, mistreatment or abuse . . . ." Cal. Fam. Code § 3424(a) (emphasis added); *see also* N.D.C.C. § 14-14.1-15(1) (containing a similar provision as part of North Dakota's adoption of the UCCJEA). The California court's invocation of its "emergency jurisdiction" in the August 2023 order was misplaced because the children were not present in California at that time, they were in North Dakota.

[¶13] In the October 2023 ex parte order, the California court indicated the order was not to be considered temporary and thus was no longer an exercise of emergency jurisdiction. In relevant part, California law provides an "action is commenced . . . when the complaint is filed," Cal. Civ. P. Code § 350, but "the issuance and service of summons is a prerequisite to acquisition of jurisdiction." *Indep. Bankers Tr. Co. v. Superior Ct.*, 138 Cal.App.3d. 238, 241 (Cal. Ct. App. 1982). Hughes was not served with the California action until after the second ex parte order was issued. Waters was served with the North Dakota action on August 30, 2023. As a result of the delay between the filing and service of the California action, North Dakota obtained jurisdiction over both parties before California.

[¶14] Neither California nor North Dakota was the children's "home state" when the North Dakota proceeding was commenced because the children had not lived in either state for the requisite six months. *See* N.D.C.C. § 14-14.1-01(6) (indicating the home state "means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding"). After becoming aware of the competing cases in California and North Dakota, the two courts communicated about the issue of their respective jurisdictions, as encouraged by the UCCJEA. *See Castro v. Castro*, 2012 ND 137, ¶ 10, 818 N.W.2d 753 ("The UCCJEA contemplates judicial cooperation as one of the methods for eliminating simultaneous proceedings and provides mechanisms for courts to cooperate with each other."); *see also* N.D.C.C. § 14-14.1-09(1) and (2) (permitting a court to

"communicate with a court in another state" regarding a child custody action and mandating that parties "must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made").

[¶15] By the time North Dakota assumed jurisdiction on February 2, 2024, both parties had been given the opportunity to present facts and legal arguments before a decision on jurisdiction was made. In addition, the California court had purportedly transferred the California action to the State of Washington. Thus, there was no longer a jurisdictional conflict between California and North Dakota when the North Dakota court assumed jurisdiction, but potentially a jurisdictional conflict between Washington and North Dakota. There is, however, no evidence in the record of a pending child custody proceeding in Washington.

[¶16] Under these circumstances, when North Dakota assumed jurisdiction: (1) no other court had home state jurisdiction, *see* N.D.C.C. § 14-14.1-12(1)(a); (2) no other courts with home state jurisdiction had declined jurisdiction on the ground that North Dakota was the more appropriate forum, *see* N.D.C.C. § 14-14.1-12(1)(b); and (3) no other courts with jurisdiction (whether home state or otherwise) had declined jurisdiction on the ground that North Dakota was the more appropriate forum, *see* N.D.C.C. § 14-14.1-12(1)(c). The district court therefore properly assumed jurisdiction pursuant to N.D.C.C. § 14-14.1-12(1) & (1)(d), which provides "a court of this state has jurisdiction to make an initial child custody determination only if . . . [n]o court of any other state would have jurisdiction under the criteria specified in subdivision a, b, or c."

[¶17] As part of her jurisdictional challenge, Waters also invokes the Parental Kidnapping Prevention Act (PKPA), 29 U.S.C. § 1738A(a). Other than providing a naked reference to the PKPA, Waters developed no argument to identify how the district court violated the PKPA. We therefore decline to consider the argument. *See, e.g.*, *Hoever v. Wilder*, 2024 ND 58, ¶ 5, 5 N.W.3d 544 ("We will not consider an argument that is not adequately articulated, supported, and briefed, or engage in unassisted searches of the record for evidence to support a litigant's position." (cleaned up)).

5

## III

[¶18] Although Waters raised additional challenges to the judgment on appeal, those remaining arguments were either not adequately articulated, supported or briefed, without merit, or unnecessary to our decision.

## IV

[¶19] We affirm the district court's exercise of jurisdiction, and the resulting judgment.

[¶20] Lisa Fair McEvers, C.J.
Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Douglas A. Bahr